SAMUEL FITCH *vs.* MILO M. BELDING AND OTHERS.

*D,* owning a large mill pond and the land below on both sides of the stream, and two mills which were supplied by a canal with water which returned to the stream below, sold a mill site to *R* at a still lower point, the deed describing the privilege conveyed and stating a covenant of the grantor as follows:—Which privilege shall consist of the right to pond back the water of the river to a point [describing it;] with the right to use all the water now used or which may hereafter be used at the two privileges owned by the grantor. And the grantor doth hereby covenant that the grantee and his assigns shall at all times have as much water to use as will be required, with a properly constructed breast-wheel, to run six complete sets of woolen machinery during twelve hours in each working day; provided the dam of the grantee be properly graveled and kept in repair, and provided there be water enough in the pond to furnish this quantity without reducing the head at the grantor's mills. Held that the description of the right granted as a right to use "all the water" &c., was to be taken in connection with, and was qualified by, the covenant of the grantor, and that the grant was of only sufficient water to run six sets of machinery for twelve hours each day.

PETITION for an injunction against the diversion of water and for other relief; brought to the Superior Court in Tolland County. Facts found by a committee and case reserved for advice. The case is sufficiently stated in the opinion.

*A. P. Hyde* and *D. Marcy,* for the petitioner.

*C. E. Perkins* and *M. R. West,* with whom was *B. H. Bill,* for the respondents.

PARDEE, J. This is a petition for an injunction restraining the respondents from diverting any portion of the water of Hockanum river from the petitioner's privilege.

On June 22d, 1864, A. Dart was the owner of Paper Mill Pond on Hockanum River and of land on both sides of the stream below. Water passed through a canal over the wheels of his two mills, Twine and Star mills, and returned to the stream within the limits of his land. Below the

place of return he had constructed a dam. During a great portion of the time a large and valuable amount of waste water ran from the pond which returned to the stream elow his premises, the great fall and quantity of which were naturally calculated to attract attention as affording another valuable mill privilege. On that day he sold and conveyed to J. Rich the land upon which was the last mentioned dam, and the water privilege connected therewith, the deed describing the right conveyed and stating a covenant of the grantor as follows:—" Which said privilege shall consist of the right to raise and pond back the water of the Hockanum river, running through said premises, to a point sixteen feet above the top of the north-west corner of the American Mills' waste-way, with the right to use all the water now used, or which may hereafter be used, at the two privileges owned by said Dart, and situated above and easterly from the privilege herein conveyed. And said Dart, for himself, his heirs and assigns, doth hereby covenant to and with the said Rich, his heirs and assigns, that the grantee and his assigns, and all who may own or occupy the privilege herein conveyed, shall at all times have as much water to use as will be equal to the amount usually required, with a properly constructed breast-wheel, to run six complete sets of woolen machinery during the usual running time for mills in Rockville, namely, during twelve hours in each working day; provided the dam of the grantee shall be properly graveled, and the same and the flume kept in suitable repair; and provided further that there shall be sufficient water running into said Dart's pond above to furnish the said amount of water without reducing the head in his pond; and said Dart and his heirs and assigns, and all who may hereafter own or occupy the privilege above, now owned by said Dart, shall forever keep and maintain a suitable waste-way or other contrivance, either at the bulk-head or on the falls, to furnish the privilege herein conveyed with water as aforesaid, when the same shall not otherwise be furnished by the running of the works above."

It is the contention of the petitioner that inasmuch as at the execution of the deed from Dart to Rich, all the utilized power of the pond passed over the Twine and Star wheels and returned to the stream above the dam conveyed, Rich had a right to rely upon the continuance of that state of things, and that the deed is to be interpreted as a conveyance of the entire power of the stream without restriction or limitation; that the expression, "which said privilege shall consist of the right to raise and pond back the water of the Hockanum river running through said premises," in the intent of both parties conveyed that unlimited right; and that the expression, "with the right to use all the water now used or which may hereafter be used at the two privileges owned by said Dart and situated above and easterly from the privilege herein conveyed," and the covenant that the grantee shall at all times have as much water to use as will be equal to the demands of six sets of machinery, were added for the sole purpose of placing that intent beyond the possibility of a doubt.

But, we may well presume that if an attempt had been made to repeat and confirm a grant claimed to be of itself in words of unlimited reach, the grantor would have been required to say, and would have said, that he granted the right to all water ever thereafter flowing from the pond, together with the right to draw it through suitable wasteways when it did not pass over the wheels above; that he would not have added, and the grantee would not have accepted, a provision cast in the form of a limitation to water sufficient for six sets of machinery, provided he should hold it by a tight dam and flume and use it on a properly constructed wheel. Indeed, upon the theory that the grantee was entitled to all of the water of the stream, inasmuch as he could not use any until it had passed beyond all possibility of use by the grantor, it is difficult to discover any reason for requiring the grantee to maintain a tight dam and a proper wheel. It would seem to be of small consequence to the grantor what became of water which he neither owned nor could use. But giving expres-

sion to every paragraph, the instrument in apt and clear language is the conveyance of an exactly measured part of an estate. The grantee received the right to have for use at all times upon the land conveyed as much water " as will be equal to the amount usually required with properly constructed breast-wheel to run six complete sets of woolen machinery," with the privileges and upon the conditions specified; if not over the wheels above, then through sufficient waste-gates to be provided by the grantor. It is found that, beginning in 1865, Dart excavated a pit, built therein a wheel fifty-six feet in diameter, erected over it a building for manufacturing purposes, all at great cost, for the express purpose of using not only the waste-water, but that portion of the water which he believed he had reserved from the grant to Rich, and, from the completion of these structures until this present he and his assigns have there used water in accordance with such intent; not returning it to the stream for the use of Rich or his assigns; with knowledge on the part of Rich while owner of the premises and on the part of his grantees as to Dart's intentions and acts; and before 1871 no one of them notified him or the respondents, his grantees, that such use of the water was in violation of the terms of the grant to Rich. Their long continued silence with such knowledge is most convincing evidence that they did not suppose they had any right to speak.

It not appearing from the finding that the respondents have interfered or that they threaten to interfere with the petitioner's use of the quantity of water herein specified, the Superior Court is advised to dismiss the petition.

In this opinion the other judges concurred.